Matthew **STEPHENSON**, Defendant
Below, Appellant,

v.

**STATE of Delaware**, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 17, 1992.
Decided: March 23, 1992.

John H. McDonald, Asst. Public Defender, Wilmington, for appellant.

William J. Rhodunda, Jr., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, MOORE, and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Matthew Stephenson ("Stephenson"), was convicted, following a jury trial in the Superior Court, of Robbery in the First Degree. On July 5, 1991, Stephenson was sentenced to a period of five years incarceration, to be suspended for probation after four years.

Stephenson raises one issue in this direct appeal. He contends that the Superior Court committed reversible error by admitting into evidence a "mug shot" of Stephenson that had been taken from police files. We have concluded that Stephenson's position is not meritorious.

### Facts

The evidence presented at trial established that on the evening of December 15, 1990, a tall, heavyset white male entered a Claymont mini-market, pointed what appeared to be a gun at the store clerk, Joseph Mallon ("Mallon"), and demanded money. After the perpetrator fled with all of the money from the cash register, Mallon telephoned the police. When the police arrived, Mallon described the perpetrator as an extremely large man, approximately 6'5" or 6'6", weighing 275 pounds with curly hair and a beard. He also stated that the robber was wearing boots, camouflage pants, a T-shirt and a baseball hat.

The police retrieved a videotape of the robbery from the mini-market's surveillance camera. Using still frames of the perpetrator obtained from the videotape, the police were able to prepare "wanted" posters. The posters were distributed to local businesses in the area of the mini-market.

On December 26, 1990, the police received a telephone call from Greg Stephenson, who stated that he had seen the wanted poster and believed that his brother, Matthew Stephenson, was the man depicted in the poster. Greg Stephenson met with a

police officer, who allowed him to view the videotape of the robbery. After watching the videotape, Greg Stephenson stated, "That's Matthew. No doubt." [1]

That same day, the police requested that Joseph Mallon come to the police station to view a photographic lineup. Stephenson's photograph was one of nine photographs shown to Mallon. Nevertheless, Mallon stated that he could not identify any of the persons in the photographs as the perpetrator. After Mallon viewed the photographic lineup, the police showed him the videotape of the robbery. Mallon stated that he was surprised to discover that the robber did not have curly hair or a beard, as he had originally told the police.

At trial, Mallon made a positive in-court identification of Stephenson as the perpetrator of the robbery. Mallon stated that he recognized Stephenson because of his facial features and his large size. On cross-examination, Mallon stated that his identification of Stephenson was the result of his own recollection, and that the police photographs did not cause him to implicate Stephenson.

At trial, Stephenson's attorney proceeded to challenge Mallon's in-court identification. The arresting officer testified during defense cross-examination that, based on the discrepancies in Mallon's original description of the perpetrator, he initially did not believe that Mallon would be able to identify the robber. The officer also testified during cross-examination that Mallon had been unable to identify Stephenson as the robber from the photographic lineup.

■ During redirect examination of the officer, the prosecuting attorney moved to admit into evidence the photograph of Stephenson used by the police as part of the photographic lineup. After an unrecorded sidebar conference,[2] the photograph was admitted into evidence despite Stephenson's objection. The videotapes were admitted into evidence without objection.

The only evidence presented by the defense was the testimony of Stephenson himself. Stephenson denied robbing the mini-market. He testified that he was at home with friends at the time of the robbery. Stephenson admitted during direct and cross-examination to having a prior record of two felony convictions. The jury found Stephenson guilty of Robbery in the First Degree.

### Photograph Admissible

■ Stephenson's only contention in this appeal is that the Superior Court committed reversible error by admitting the police photograph of Stephenson into evidence. Stephenson contends that the photograph in this case failed to meet the three prerequisites for admissibility of "mug shot" type photographs of a defendant, which were set forth by this Court in *Brookins v. State*, Del.Supr., 354 A.2d 422 (1976).

In *Brookins*, this Court held that before "mug shot" type photographs can be admitted into evidence: (1) the prosecution must show a demonstrable need to introduce the photograph; (2) the photograph, if shown to the jury, must not imply that the defendant has a prior criminal record; and

1. Coincidentally, the police recovered another videotape from the mini-market's surveillance camera, which was made on December 26, 1990. The second tape depicted a man resembling the perpetrator, who walked into the mini-market and walked back out after approximately ten seconds without transacting any business. Greg Stephenson later viewed this second videotape and also identified the man as his brother, Matthew.

2. More than ten years ago, this Court noted that the absence of a complete record of all pertinent exchanges between a trial judge and counsel was distressing and likely to constitute reversible error in a foreseeable situation. *Bailey v. State*, Del.Supr., 440 A.2d 997, 1000 n. 1 (1982).

At this Court's direction, the Superior Court adopted the following rule:

> All *sidebar conferences and chambers conferences* during trial *shall be recorded unless* the trial judge determines, in advance, that *neither evidentiary nor substantive issues are involved.*

*Ross v. State*, Del.Supr., 482 A.2d 727, 734 n. 9 (1984) (emphasis added). The recording of all substantive sidebar and chambers conferences is and has been mandatory. *Flamer v. State*, Del.Supr., 490 A.2d 104, 131 (1983). Super.Ct.Crim.R. 26.1. In the interest of justice, to insure effective appellate review, it is incumbent upon the Superior Court to follow that mandate assiduously.

(3) the introduction at trial must not draw particular attention to the source or implications of the photograph. *Id.* at 423.

Despite Stephenson's argument to the contrary, the record demonstrates that the photograph in this case did meet the three prerequisites of *Brookins.* First, because Stephenson presented an alibi defense in this case, the sole issue at trial was the identity of the perpetrator. Given Stephenson's attempt to discredit Mallon's in-court identification of Stephenson as the robber, the prosecution had a demonstrable need to introduce the photograph in order to rebut the inference of a mistaken identification by the State's only eyewitness to the crime.[3] *See id.* at 425 ("If there is an attack upon the [in-court] identification [of the defendant], then rebuttal testimony about the photographic review would be appropriate to support the in-court identification.").

Second, the photograph, which showed a front and side view of Stephenson's upper torso and head dressed in civilian clothes, did not contain any direct or indirect reference to Stephenson's prior criminal record. The record indicates that there were no markings on the front or back of the photograph to indicate that the photograph was part of a police file. *See id.* at 424–25. Therefore, the photograph met the second prerequisite of the *Brookins* test.

Third, as to the source or implication of the photograph, there is nothing in the record to support Stephenson's contention that the State's action was contrary to this standard. The State's introduction of the photograph was as follows:

Q. Detective, what is that that I just handed you?

A. It's a photograph, a front facial view and a left side view of Matthew Stephenson.

Q. Now, under cross-examination from the defense it is clear that there were nine photographs and one was of the defendant?

A. Yes

Q. That you showed the victim?

A. Yes, sir.

Q. Where did you get that photograph from?

A. Troop 2.

.    .    .    .    .

Q. Detective, just to clarify the situation is this the photograph that was used in the photo lineup?

A. Yes it is.

Q. And was the victim able to pick out the defendant based on the photo lineup that you put before him?

A. No.

Q. And was he able to pick out any particular individual that you had in the nine individuals that you showed?

A. No.

Nothing in this colloquy improperly suggests Stephenson's prior criminal record. The officer did not refer to the photograph as a "mug shot," nor did the officer's reference to Troop 2 insinuate Stephenson's prior criminal activity. As this Court has previously noted, "[s]howing photographs to victims and witnesses is a routine part of police investigation." *Brookins v. State,* 354 A.2d at 425. There is nothing in the officer's testimony to suggest that anything more than that was done here.

■  Consequently, we conclude that the photograph met the three prerequisites of *Brookins.*[4] Therefore, Stephenson's claim

---

3. The State contends, and Stephenson does not dispute, that the photograph of Stephenson, presented to Mallon as part of the lineup, did not bear a strong resemblance to Stephenson as he appeared in the videotape of the robbery or as he appeared in court at trial.

4. Notwithstanding this conclusion, the record reflects that, even if the photograph was improperly admitted, any adverse implications of the photograph were "rendered harmless by the disclosure to the jury of defendant's prior criminal convictions." *Scott v. State,* Del.Supr., 521

A.2d 235, 241 (1987). During both direct and cross examination, Stephenson admitted that he had a prior felony record. Consequently, the jury learned nothing inferentially about Stephenson through the use of the police photograph "that it would not have learned later in the trial." *Id.* (quoting *Spencer v. State,* Del. Supr., 307 A.2d 794, 796 (1973)). *See also State v. Boyd,* Del.Supr., 91 A.2d 471 (1952) ("The impropriety of the testimony [concerning a mug shot of the defendant] may have been cured substantially if the State had proved prior con-

that the Superior Court committed reversible error, by admitting the photograph into evidence, is without merit.

*Conclusion*

The judgment of the Superior Court, resulting in Stephenson's conviction, is AFFIRMED.

viction of a felony as is permitted by the Statute